Mr. Davis. Thank you, Your Honors. I appreciate the opportunity to present my oral arguments on behalf of the appellants. The district court erred when denying defendants' motion for summary judgment because they are entitled to qualified immunity as each should not violate a clearly established constitutional right beyond debate. After Harvell threatened violence and repeatedly, after repeated orders to submit to restraints and warnings that force would be used if Harvell did not submit, defendants properly used objective reasonable force to secure Harvell and then move him to segregated housing. So, counsel, I mean, you started out saying there wasn't clearly established law, but then you are jumping into the facts. So I want to kind of parse this out because it seems to me you have a tougher case on the, you know, on a factual dispute here. There's not, you know, a lot of these cases come up. We have video evidence or, you know, uncontested facts. That doesn't seem to be the case here. Well, Your Honor, Your Honor is correct. You know, you have to go because it's a motion for summary judgment. You have to go by the facts that are established, the undisputed material facts that are established. But the thing is, is you got to also look at Mr. Harvell's testimony. I mean, his declarations about how this all happened. Harvell's version of this event is that, hey, I was there. I was kneeling on the ground. They put restraints on me. Then they pushed me forward and they started punching me. That's his version of the facts. But if you look at the video, it is clear from the video.  Well, I mean, that's the question. Is it clear from the video? It doesn't seem like it's clear from the video. The video doesn't. That's what I'm saying. We don't have a clear video in this case. Well, the part of the video that is clear, Your Honor, is that he was not in restraints before he jumped forward into the cell. So you can't believe his – he can't believe his declaration that he was punched beforehand because of the timing of when he says – That doesn't answer the question about whether he would have been punched after. I mean, if we get into – clearly established seems to be your best argument here. And, I mean, I guess that's what I'm interested in sort of delving into because we basically have two cases, the Manley case from the Ninth Circuit and the Hughes case from the Supreme Court, and Hughes relies on Hudson. So can you explain to me why those cases don't create a clearly established case? So in Manley, okay, which of course the court relies on Harbell, the prisoner was not only restrained, okay, in handcuffs and in leg irons, right, that that was an undisputed fact that he was restraining leg irons and leg guards, but was – but present allegedly was punched, kicked, and stomped after the prisoner was extracted, okay, which is not this case, right, Your Honor? He's not being punched, kicked. There are definitely no signs of punch. I mean, that's clearly established in the video, right? No punching or kicking after he's being extracted. How do we know that? Well, the video shows that he's not being punched, kicked, or hit after being – after extracted from the cell. The video – that's clear in the video. Okay. Okay. So you're saying the clearly established depends on the facts being punched or kicked? Right, because that's – well, that's what you have to do. You have to look at the facts and circumstances of the case in order to make it clearly established. You've got to look at this, Your Honor. This is not a case where these officers are going in and saying, hey, we're going to go in and we're going to beat the crap out of this guy. What it is is that they have a situation where it's more like the Soto case, Your Honor, where the – this is a highly volatile instance, where the inmates – in Soto they said the inmate sometimes will appear to be docile and then all of a sudden changes his mind and do that, and that's exactly what we have here. We have an instantaneous reaction by the officers. You've got to put yourself in the place – the Supreme Court says that you have to put your place with the deference. You have to give these officers deference in the place that they're at. You can't look at this and say, hey, you know, after the fact, you know, maybe they shouldn't have rushed into the cell and done this when he moved himself into the cell. Maybe they shouldn't have done that. But the thing is is they're making an instant reaction to get him in restraints that he is trying to avoid and trying to be put into, and that's the version you have to look at this. In the Manley case, Your Honor cited, well, you know, that's not happening. He's being punched after he's taken out of the cell, after he's in full restraints. Well, and we'll hear from Apolli on this, but Manley, it seems there's even a more fundamental problem, which is they didn't find an underlying constitutional violation. On Manley, as I understand the case, they just said there's factual disputes, and they set it back down because of that. Well, the thing is you have to do that, though. You have to go through the two steps of qualified immunity. You have to find – first you have to find whether there's a violation, and then you have to find whether the violation is clearly established. So you think they found a violation in Manley? You know, Your Honor, I'm going to reply on your recollection. My recollection was that they did – well, no, that they did find a – well, they had to find a violation because if they didn't find a violation, they wouldn't have – they couldn't have proceeded forward. They had to – under the undisputed facts, they found a violation. They're not saying that – they're not saying, well, you know, the jury couldn't find otherwise because there's dispute about what happened in the case. But under the undisputed facts, there couldn't have been a – there had to be found a violation. So you're resting your position on your view of the video where the district court said he couldn't – couldn't make that call?  I mean, do we even have jurisdiction to decide whether the district judge was correct in saying there was an issue of fact? Your Honor, the Supreme Court has now been clear on this. In the Baran case and the various cases that I cited in my brief that, you know, this court is supposed to then look and just take it and look and find, you know, what are the undisputed facts? And you have jurisdiction then to discern whether there's a violation of clearly established law. So this court has jurisdiction in this instance. Even if we've overstated the facts, this court has said, you know, you guys are smart enough to decide whether or not which facts are undisputed and then look at those facts and determine whether or not there's a violation of clearly established law. And so that's what we've been asking all along. And so that's what this court has jurisdiction to do. The Hughes case is – you know, I agree the Hughes case is a little bit more troubling, but you've got to remember the Hughes case is different from the particularities of this particular case. The Hughes case is not a case in prison. Okay? And at first glance you say, well, hey, you know, maybe it's a little bit more things. But the thing is the prison has specific rules about how people have to be restrained before they're moved to a different cell. And in this case they have to be put in hand restraints and leg irons before they're moved. And here Harvell is definitely trying to avoid. I mean it first appeared that he was going to be compliant, but then he tries to avoid. You know, and it's like the court said in the Soto case. Can I just tell you what my concern is with Hughes? Okay. Because maybe that will cut to the chase a little bit. In Hughes the Supreme Court said that there was a material fact, a dispute of material fact, about whether he was beaten after he was handcuffed. If we take that at face value, I don't understand how we can rule in your favor because it seems to me there is a dispute of material fact here about whether he was beaten after he was in handcuffs. Now, well, so address that first point.  So the first point is that first I would say the video establishes, because you have to look at his declaration and compare it to the video. And I think that's what the district court didn't do. He's looking at this part of the video after the fact. And I will admit that once he's in the maelstrom inside, you're not seeing much of what's going on in that video. But before he goes in, it's clear he's not in restraints, fully in restraints, which he has to do before he's- I guess I'm not disagreeing with you, but that doesn't answer the question. He could have been beaten both before he was in restraints and after he was in restraints. So I guess I would give you that Hughes is not clearly established as to whether he was beaten before restraints. I'm trying to grapple with what do we do with that, because they didn't find an underlying violation even in Hughes, but there is this statement. And so what do we do with it? Why is that not enough to say it's clearly established that you just categorically cannot beat an inmate after he's in restraints? Well, you know, after he's fully- because he's got to not only be in restraints, he's got to be- they said that he was in full restraints and under control. That's what the thing was. He was in full restraints and under control. That's what we don't have in this case. And, Your Honor, even if, Your Honor, if there was evidence to the record establishing that he was punched after he was in restraints, you also have to show that there's a maliciously insubstantive purpose for the force applied. You've got to show that these officers knew he was in restraints beforehand. I mean, that's the thing. You've got to look at this from the perspective of the officers. They're doing this within 90 seconds, and they're trying to get him in restraints, and things are going on, and the thing is, you know, until they know that he's fully in restraints, then they can't do it. And any inadvertent touch-  Counsel. Okay. Please explain to me how an officer who's putting restraints on the inmate would not know whether he's in restraints beforehand. Because there's more than- Your Honor, there's more than one officer there putting on restraints. Okay, but then it's a material issue of fact as to who put it on. No, no, no, no, Your Honor. It's his burden of proof of showing that they knew. He has a burden of proof of showing that they knew beforehand. You've got such good arguments. I think you just keep derailing into bad arguments.  Well, Your Honor, I want to go into maybe go into some of the other cases that talk about these things, you know. For example, Your Honor, the- you know, first, he doesn't have any injuries at all. His injuries are very much minor compared to those of Hughes, and I want to also- But is that dispositive? I mean, I understand that that's a factor, but is that dispositive? No, because- but all the factors together show that- Yeah. That they didn't violate any of these things, okay? You take this thing, for example, the Lemaire case, you know, that they had to use force, right? I don't think there's any dispute that they had to use force because he was not obeying orders. I think we can say that that factor clearly goes in our favor, and you don't even have to talk about that anymore. The Soto case is more specific and says you just can't say, you know, that we can just wait out inmates. You just can't do that. The third factor is that, you know, in light- whether the force was reasonable in light of the force used, okay? The Whitley case in the Supreme Court- and I want to make sure the Court's aware of this because you said a couple times that Hughes is a Supreme Court case. It's a Ninth Circuit case. It's not a Supreme Court case. Hughes? Yeah, I think- Oh, you're right. You're right. I'm sorry. I got it mixed up with- it relied on Hudson, didn't it, that was the Supreme Court case? Right, Hudson is a Supreme Court case, but Hudson isn't totally establishing this. It's just providing the factors. Yeah, no, I agree. You know, but the Whitley case, you know, the- Whitley, the Supreme Court says you just can't look at this after the fact thing. You've got to look at this and say, hey, you know, are they doing this for the purpose of maliciously doing this, or are they doing it to get him under control? And I think all the facts in this case say that there's no reason for him to be doing this other than the only reason they're doing this is in order to get him in control and to move him to segregated housing. Do you take the position that a reasonable corrections officer in 2022 when this occurred would not know that beating a cuffed or restrained inmate is against the law, constitutional law? That beating an inmate that was fully restrained and under control would have been a violation of the law? Yes, Your Honor. All right. So if that's- you agree that you don't take that position, correct? No, I do not, Your Honor. All right. So tell me why this doesn't- you're just relying on the video that the facts are in your favor. Is that fair to say? Well, no. I mean, I'm going along with cases, for example, the First Circuit in Skinner said they rejected. I mean, I think Skinner is on all points with this case where the person- where the fellow officers- the officers entered and pushed him to the side of the ground, handcuffed him, carried him out, and even though the inmate asserted he was punched in the face when he was being extracted, the Supreme Court said because the chaos was the making of the inmate at that particular instance in time, that that is what the difference is, is that because he's making this chaos of his own making. If he would just voluntarily do this, there would be no things of this. The officers would have had no reason to go in. They wouldn't have had any reason. And even though the officer- even though he claimed he was punched in the face, that that would have been enough. And that's the difference between this case, is because the officers here, they're in the maelstrom of this, doing this. And, you know, if I look back on this, and I'm sure the officers said, you know, if we would have just, you know, when he went forward into the cell and just said, stayed outside for a little bit and then gathered him, well, then they would have been okay, right? But the thing is, you've got to look at it in the moment of when these officers are doing this. Well, unfortunately, we can't unwind the facts about what happened. No, but the Supreme Court says you have to have- that's where you have to give the officers deference in this case. The Supreme Court at Whitley has said that over and over again. You have to give the officers deference. You should not be looking at this after the fact and saying, hey, under calm reflection, you know, there may have been a better way to handle this. But, you know, the officers are not in calm reflection. You've got to put it in their shoes. You've got to look at it from their perspective. The Supreme Court has repeatedly said, as we said in our brief, that you have to look at it from the officer's perspective. Do you want to reserve your 26 seconds? Whatever time I have left, Your Honor. Thank you.  Go ahead. May it please the Court. Miles Unterreiner for Plaintiff and Appellee Sean Harvell. I'd like to focus my argument today on two points. First, the District Court determined that there is a genuine dispute of fact as to whether Harvell was punched after he was restrained in arm and leg restraints. That determination must be accepted on interlocutory appeal. Second, once that genuine factual dispute is construed in Harvell's favor, this Court's decisions in Hughes and Manley control this case. OK, so let me push back a little bit on Manley because Manley didn't decide the constitutional claim. What are you relying on in Manley? I mean, Manley just said, hey, there's factual disputes. We've got to send this back. It didn't help me understand why Manley clearly establishes this. Your Honor, the court in Manley concluded that there was a dispute of material fact as to whether Manley was, in fact, punched while he was restrained in handcuffs and leg restraints. That's necessarily a conclusion that that fact matters, that that fact is material. It's only material if a jury found that fact in Manley's favor. The case would go Manley's way. So it's necessarily a holding, I think, that the fact whether Manley was punched, if a jury found for him on that issue, would mean that he would win the case on the merits. I would also note that what the district court did here is exactly what the district court did in Manley. It concluded that because there was a dispute of material fact as to whether Harvell was restrained in arm and leg restraints, that the case could not be resolved at summary judgment and had to go to trial. So this case is on all fours with Manley on that point. So when did this happen again? What date did this happen? June 2nd, 2022, Your Honor. June 2nd. Correct. Okay. So it was two months after Hughes. That's correct. So Hughes does apply. It does. Yeah. And so the question in Hughes is a little bit more nuanced because there is this statement that, look, we have to send it back. But what did it rely on for the clearly established law in Hughes? Because it cites to Hudson, and Hudson doesn't really set this up. So, I mean, does that mean that it's clearly established? Or how do we grapple with that? Yes, Your Honor. It is clearly established. So Hughes did two things. First, it concluded that a reasonable jury, once you construed the facts in Hughes's favor, could find for him on the Eighth Amendment claim. That's at page 1222 of Hughes. It then concluded that the law was already clearly established at that time, that what happened to Hughes was unconstitutional. That's at page 1223. So Hughes reached both prongs of the qualified immunity inquiry and found for Hughes on both points. It did point to Hudson. But the facts in Hughes are not distinguishable from the facts in this case. I'd be happy to talk about why that is. In Hughes, just as in this case, there was an extraction of the plaintiff from the location where he was. Officers were standing right outside the door of that location. They then eventually contacted the plaintiff physically. In Hughes, there was actually a much more chaotic situation. There was a struggle between Hughes and the officers. An officer's body cam was knocked off his chest. And at some point during that chaotic struggle in Hughes, handcuffs were snapped on. And the court drew a really bright line. At that moment in time, once the handcuffs are on, it's no longer permissible to continue punching the inmate. Exactly the same thing is true in this case. Nothing in Hughes is distinguishable on its facts. And I actually didn't see anything in my friend on the other side's brief that actually contested that the facts in Hughes are different. What about this argument that there were three officers involved in this, right? Maybe not all of them knew. Clearly, whichever officer put the handcuffs on would have known that he was handcuffed that the others may not have. Does that matter here? First of all, can we figure that out? Is there testimony in here? And I guess my second question is, does it matter? Because wouldn't that just be a material fact that needs to go back down? That's right, Your Honor. I would start with the second point. The sufficiency of the evidence to prove a fact and whether there's a genuine dispute is not reviewable on interlocutory appeal. So what exactly the facts are in the chaotic situation inside the cell that's not visible on the video, that's a question of fact for the jury. But we don't have any evidence elsewhere in the record that would make this undisputed, that one officer said, no, I put the handcuffs on. I mean, it does seem like Pickens probably did not put the handcuffs on. I think that's probably correct, Your Honor. I don't believe there is specific evidence as to that point. But what is clearly alleged in Harvell's sworn complaint under penalty of perjury that testifies to facts within his personal knowledge at page 2 ER 228, 230, and 232 of the record is that after the leg restraints were on, we know the handcuffs were on from the very moment officers entered the cell. And what Harvell says in his sworn complaint is that after the leg restraints were on, he was repeatedly punched by officers Rigney and Brown. That's the material fact in this case. And that material fact is not reviewable on interlocutory appeal. And, of course, even under the ordinary summary judgment rules, all facts and all reasonable inferences from those facts have to be construed in Harvell's favor. But what you just said, I guess, I mean, I was sort of viewing it that they would all three fit in the same bucket. But what you just said is maybe there is a reason to treat Pickens in a different bucket if there's no evidence that Pickens actually beat him after the handcuffs would have been on. The claim against Officer Pickens, Your Honor, is a failure to intervene claim. It's that once Pickens, we know that Pickens was in the cell helping to restrain Harvell to place a spit mask on his head. That's it. Pickens's own report makes that clear. That's at ER 153 and 154 of the record. So Pickens, it's a failure to intervene claim. The standard for a failure to intervene claim is set out at page 584 of this court's 2021 decision in Tobias v. Arteaga. And Tobias says that the right that's violated by the officer who fails to intervene is exactly the same right analytically as the right that is violated by the officer who carried out the use of force. So what the district court concluded at ER 14 is that Pickens, whether Pickens had a reasonable opportunity to intervene to stop the punching, whether she saw the punch, that's an issue of fact for the jury. It's in dispute. It's a genuine dispute. That conclusion is likewise not reviewable on interlocutory appeal. And the questions about whether Pickens saw the punching, whether she could have intervened at that time, those are all factual questions. They're not reviewable on interlocutory appeal, and they have to be read in Harvell's favor. So if we decide that there is a genuine issue of fact and the case goes to trial, then you've got the question of how do you instruct the jury on what is the standard for measuring the officer's conduct? What is the clearly established law, in other words? So what is the standard? Do we need to decide that even now? It doesn't need to be decided here, Your Honor. So two points in response. Hughes and Manley, and I would say in particular Hughes, clearly established the law in this case. Both cases precede the events of this case, and they're factually on point. What the actual standard is for an Eighth Amendment claim is very clear. That's set out in Hoard v. Hartman. I believe it's a 2018 case from this court. There are three elements. The first element is an intent to harm the inmate rather than restore order. The second element is force that is excessive under all of the circumstances. And the third element is injury to the inmate. Those are the standard Ninth Circuit jury instructions. It's actually in footnote 9 of Hoard v. Hartman. And so the instructions to the jury would be clear. So that law is clearly established then? It is. It's very clearly established by Hughes and Manley, and the jury can decide the factual questions that the district court in this case concluded were in dispute. I just want to conclude on one point that my friend on the other side raised, which is that supposedly some other factual allegations that Harvell makes are supposedly contradicted by the video. I don't believe that's true, as the court can see from a review of the video. But I would also just want to point out that at page 1219 of Hughes, the court observed that several of Hughes's allegations were conclusively disproven by the videotape. That included whether he yelled that he was coming out of the house, whether he raised his hands in a gesture of surrender, and also how long the duration of the punching was. So the court concluded that all three of those things, all three of those claims by Hughes were conclusively disproven, but it also clearly held at page 1219 and footnote 2 that it was required to continue to credit Hughes's core claim that he was punched after the handcuffs were on. So even if my colleague on the other side were correct, which I don't think he is, that some other aspect of the sworn complaint may have been wrong in some detail, the core claim that Harvell was punched — You don't just throw out the whole thing? You don't throw out the whole thing, and you have to credit, in particular, Hughes says at page 1219 and footnote 2, you still have to credit the core allegation that the plaintiff was punched after the restraints were on. So that argument doesn't work, even if you agreed with my colleague on the other side about the other points he raises. I have no other points to raise at this point, Your Honor, so I would submit and ask the court to affirm. Thank you. We'll give you a minute. We'll round up for you. Okay, so we got Officer Pickens out, right? We've decided that she's not involved, and therefore she's not. The second issue was, of course, the judge's question. Well, so back up. I think you're jumping to some conclusions. I didn't ask the question, but the problem with Officer Pickens, it seems to me, is the district court, I thought, explained that the investigation detail report states that Pickens was not merely present, but took part in the use of the force incident. Your Honor, that's correct. She was there present, but under Hughes, the other officers were present too, and the courts found that those other officers weren't. They were also involved in the struggle, and the court in Hughes said that those officers weren't involved at all. So under Hughes, even under the very case, Officer Pickens was there. Well, I just, it seems to me, at the end of the day, these rights are, the three rights fall together, it seems. I don't know. I'm just pushing back on your assumption. But there's no obligation that Officer Pickens punched him at all or did anything to abuse him at all. Okay. And so you have to have personal, you have to have, you can't say, you can't base it, well, the other officers were there. The other thing I wanted to raise, though, is with respect to the, what are the suited facts? We also raised in our brief the issue of, under the rules of administrative law, that the rules, the facts are conclusively established, they're established by the things, unless there's not substantial evidence. I don't think this Court could find that there's not substantial evidence, some evidence, any little bit of evidence, to support the officer's version of the fact. And so, therefore, the things that were in the, were decided in the grievance, which said the officers acted reasonably, has been conclusively established. Secondly, I want to talk about, last, the difference, sorry, the jury instructions I was going back with this. The jury instruction would be that, hey, you've got to give the officers deference. That's the jury instruction. And if you give the officers deference, then there's not a dispute of fact what's happened here. Because they only had, they did these things in split-second times. They had only 90 seconds in which this happened. And they're doing this in the struggle of the moment. You can't say on the path, well, geez, you know, maybe something else should have happened. That's not what the Supreme Court says. The Supreme Court says we're required, not juries, not judges, but the officers who are on the boots on the ground are the ones that have to make these difficult decisions about what they're going to do to make sure the inmate is restrained and so nobody gets injured. Yep. We got it. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted, and that concludes our arguments for the day. All rise.
judges: SMITH, NELSON, Lefkow